UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:07CV39-J

RONALD MULCAHY                                                           PLAINTIFF

v.

TENNESSEE VALLEY AUTHORITY                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Mulcahy brings this action *pro se* claiming he was injured by Tennessee Valley Authority Police Officer Eric Fields during an incident that occurred on April 1, 2006 at the Hickory Park Campground near Benton, Kentucky. While the pleadings are not entirely clear on their face, it appears that Mr. Mulcahy's allegations are best characterized as alleging that defendant violated his rights under the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983 ("1983 action") by using excessive force against him during his arrest and handcuffing. So, for purposes of this Court's review, Mr. Mulcahy's claim will be construed as a 1983 action alleging excessive force. The defendant, Tennessee Valley Authority ("TVA") has filed a Motion for Summary Judgment on behalf of itself and Officer Fields[1] (DN 49) to which the plaintiff has filed a response (DN 50). Fully briefed, the matter is ripe for decision. For the following reasons, the Defendants' Motion for Summary Judgment is GRANTED.

---

[1] The Court previously allowed substitution of TVA in place of Officer Fields for any nonconstitutional claims that may be alleged in the plaintiff's Complaint, making Officer Fields the defendant as to any constitutional claims, and the TVA the defendant for purposes of any state law claims.

# FACTS

On April 1, 2006, Plaintiff Ronald Mulcahy was visiting the Tennessee Valley Authority's Hickory Park Campground near his home in Benton, Kentucky. In his Pretrial Memorandum (DN 48), Mr. Mulcahy indicates that he was at the park with a group of young people:

> . . . drinking and having a good time including playing the radio a little to loud. When three police cars showed up and Officer Fields arrested me. He applied the handcuffes to tight. I asked him to lose in them and he said no, I asked him again and again he said no. I asked him if I could walk home and he said no. The more I was in pain the louder I got. I now have trouble with my left hand even with the doctors report which showes that he (Officer Fields) did physical and mental damage to me.

Mr. Mulcahy's Complaint alleges that Officer Fields arrested him and applied the handcuffs too tightly; when asked to loosen them repeatedly, Officer Fields refused. Mr. Mulcahy concedes that he was "cussing and trying to get out of them," but feels that Officer Fields tortured him in cold blood (Plaintiff's Complaint, paragraph 4). In the prayer for relief, plaintiff seeks justice, fair treatment, help with pain and mental pain, and for Officer Fields to pay for what he did. (Plaintiff's Complaint, paragraph 5).

Plaintiff claims that he suffered injury to his left wrist about 1 to 2 inches above the wrist, and he has submitted photographs depicting that injury. As additional proof, Mr. Mulcahy has submitted an April 15, 2008 Office Note from Orthopaedic Surgeon Claude Saint-Jacques which notes Mr. Mulcahy's continuing complaints of joint pain in the thumb joints, worse on the left, and a resulting pain injection into the left thumb joint. In addition, Mr. Mulcahy claims that this incident has made his mental problems worse, particularly his paranoia and panic attacks (Mulcahy deposition, page 39).

Officer Fields testified via Declaration (DN 49-4) and provided this version of facts. Officer Fields was familiar with Mr. Mulcahy from previous encounters, and personally knew plaintiff to have problems with bipolar disorder, excessive drinking, and misuse of prescription medications (either non-compliance with his own prescribed medications for bipolar disorder, or taking his friend's Lortabs). Officer Fields also knew of Mr. Mulcahy's previous conviction of Wanton Endangerment for discharging a firearm between the legs of one of his children. On a prior occasion on May 11, 2003, Officer Fields responded to a false report called in by Mr. Mulcahy. Thereafter, Officer Fields visited Mr. Mulcahy's home to warn him that reporting false incidents is a violation of Kentucky statute, where he observed Mr. Mulcahy to be intoxicated, emotionally unstable, and verbally abusive toward him as well as Mrs. Mulcahy.

On April 1, 2006, Officer Fields was dispatched to Hickory Park to respond to complaints of loud drinking and disorderly conduct. He observed Mr. Mulcahy to be under the obvious influence of alcohol, and saw him attempt to stand then fall down due to his drunken state. He was loud and screaming obscenities, and Officer Fields believed him to be a danger to himself. Officer Fields placed him under arrest for alcohol intoxication in a public place, drinking alcohol in a public place, and disorderly conduct. Mr. Mulcahy resisted being handcuffed, and also refused to let go of his cane. Officer Fields placed the cuffs on Mr. Mulcahy at the "valley" of the wrist, and checked to make sure they were snug but allowed for a fingertip between the cuff and the wrist before double locking them. Mr. Mulcahy was then escorted to the police car because he was too intoxicated to stand or walk on his own. Officer Fields admits that Mr. Mulcahy complained about the handcuffs being tight among other complaints, but indicates that he again checked the handcuffs before placing Mr. Mulcahy into the car. Officer Fields insists that the handcuffs were properly applied, and that

3

he noticed no injury to Mr. Mulcahy at that time. Upon arrival at the Marshal County Regional Detention Center, Officer Fields removed the handcuffs from Mr. Mulcahy and observed only normal red marks at the wrist valley. No injury was noted at that time.

In his deposition, Mr. Mulcahy testified that he receives disability benefits for bipolar disorder, but that he does not take his prescribed medications for bipolar because they are worse than the disease itself (Mulcahy Deposition at 7). He testified that on April 1, 2006, he'd had 8 or 9 beers and was drunk (Mulcahy Deposition at 23). Someone took his cane away and as a result, he fell on his face (Mulcahy Deposition at 14). Officer Fields handcuffed him and refused to loosen the cuffs when asked by Mr. Mulcahy (Mulcahy Deposition at 14). Mr. Mulcahy concedes that he struggled, and that he was madder than hell (Mulcahy Deposition at 15).

A TVA police investigation was conducted based upon Mr. Mulcahy's complaint to the TVA Police regional office in Paris, Tennessee. TVA Police Lieutenant Ken Anderson investigated Mr. Mulcahy's complaint that the arresting officer had put the handcuffs on too tightly on the night of April 1, 2006 (Ken Anderson Declaration, p. 1). Lt. Anderson was told by Marshall County jailer Sam Washam that Mr. Mulcahy was belligerent and uncooperative on the evening of April 1, 2006, and that once the handcuffs were removed, there were no apparent injuries, only normal red marks. Lt. Anderson interviewed Mr. Mulcahy, who admitted that he had struggled and tried to get out of the handcuffs. Lt. Anderson concluded that the handcuffs had been placed on Mr. Mulcahy correctly, but that Mr. Mulcahy's intoxicated state and struggling had caused the alleged damage to his wrists.

Gary Leigh, a licensed clinical psychologist and certified substance abuse professional provided expert testimony via a September 26, 2008 report. Therein, he indicates that he reviewed

4

deposition testimony and with medical records, and conducted a telephone interview with Officer Fields. Dr. Leigh notes an extensive history of alcohol abuse and psychiatric problems. Mr. Mulcahy has received disability benefits for 10 years (since 1998) for bipolar disorder, and sought mental health treatment in 2002 and 2007 at Four Rivers Behavioral Health. Medical providers have documented continuing difficulties with Mr. Mulcahy's medication compliance, and note symptoms such as irritability, agitation, rapid pressured speech, racing thoughts, over-confidence, decreased need for sleep, insomnia, depressed mood, and paranoia. Dr. Snell refers to Mr. Mulcahy's condition as uncontrolled bipolar disorder. Leigh opines that on the night in question, it is clinically reasonable to conclude that Mr. Mulcahy's volatile temperament, drunken state and psychiatric condition contributed to his inability to exercise rational judgment, accurately perceive the events as they unfolded, and utilize restraint of his own behavior.

Richard Qulia, a retired FBI agent, has offered expert testimony that Officer Fields properly applied the handcuffs, and that the injury complained of by Mr. Mulcahy is located some one to two inches above the wrist valley, a fact that refutes any claim that they were too tightly applied. In his professional experience, the type of injuries complained of by Mr. Mulcahy are typical of arrestees who struggle to free themselves from handcuffs. He posits that if the handcuffs were loose enough to be moved above the wrist bone to cause the mark Mr. Mulcahy complains of, then they were not applied too tightly. Mr. Qulia further suggests that Mr. Mulcahy's credibility and the accuracy of his memory are suspect given his altered physical/mental state. He further finds that considering the circumstances confronting Officer Fields on April 1, 2006, Officer Fields' actions were reasonable in the arrest and handcuffing of Mr. Mulcahy and were actions that any reasonably competent officer would have undertaken in the same circumstances and in the same context.

5

**STANDARD OF REVIEW**

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56c). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. V. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [his] pleadings," and must show the Court that "there is a genuine issue for trial." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the Court must construe the facts in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 , 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the question is one of qualified immunity, however, the analysis is somewhat altered. In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not necessarily preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the court finds that – viewing the facts in the light most favorable to the plaintiff – the plaintiff has failed to establish a violation of clearly established constitutional law. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir. 1996).

QUALIFIED IMMUNITY AND PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §1983

In order to state a valid claim under 42 U.S.C. §1983, plaintiff must show that Defendant Fields (1) violated one or more of his constitutional or federal statutory rights while (2) acting under

6

color of state law.  See Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006).  If a government official, including a police officer, performs a discretionary function, as here, the qualified immunity doctrine may bar the lawsuit and fully shield the official from liability.  See Id. at 536.  Mr. Mulcahy alleges that Officer Fields violated his Fourth Amendment rights by using excessive force during his arrest by applying handcuffs too tightly on April 1, 2006.  Defendants contend that Mr. Mulcahy's constitutional rights were not violated because Officer Fields acted reasonably in the course of making the arrest.

Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.  Humphrey v. Mabry, 482 F.3d 840, 846 (6th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  Id. at 847.  The task before the Court may, thus, be understood as follows:

> In resolving questions of qualified immunity, courts are required to resolve a "threshold question:  Taken in the light most favorable to the party asserting the inquiry, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry." [Saucier, 533 U.S. [at] 201, 121 S.Ct. 2151.] If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case."  Id.

Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).  The question of whether an official is entitled to qualified immunity is a question of law which must be determined by the Court.  Heflin v. Stewart County, Tenn., 958 F.2d 709, 717 (6th Cir. 1992).

However, in order to evaluate the threshold issue of whether Officer Fields is due qualified immunity under federal law, the Court must first determine whether Officer Fields violated a

7

constitutional or federal statutory right belonging to Mr. Mulcahy and, if a violation occurred, whether he transgressed a "clearly established right." Saucier, 533 U.S. at 201, 121 S.Ct. 2151. As explained below, on the facts presented to the Court in this matter, Mr. Mulcahy's cause of action for excessive force cannot survive as he has failed to show a violation of a constitutionally protected right.

A claim of excessive force in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Marvin v. City of Taylor, 509 F.3d 234, 244 (6th Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). In "'determining the reasonableness of the manner in which a seizure is effected, the court 'must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Id. (quoting Scott v. Harris, 127 S.Ct. 1769, 1778 (2007). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." Id. at 245 (quoting Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002)).

In determining whether an officer's use of force was objectively reasonable, a court must consider the facts and circumstances of each particular case, including 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. (citing Graham, 490 U.S. at 396). The Sixth Circuit has also found that "the definition of reasonable force is partially dependent on the demeanor of the suspect." Id. (quoting Solomon v. Auburn Hills Police Dept., 389 F.3d 167, 174 (6th Cir. 2004)). Objective reasonableness of Officer Fields' conduct is not a question reserved to the finder of fact:

8

> At the summary judgment stage . . . once we have determined the relevant set of facts and drawn all inferences in favor of the non-moving party to the extent supportable by the record . . . the reasonableness of [the officer's] actions . . . is a pure question of law, <u>Scott</u>, 127 S.Ct. At 1776 n.8.

As noted earlier, this Court may only consider the second step issue of qualified immunity if, and only if the Court determines that the amount of force used was objectively unreasonable under the circumstances. <u>Saucier</u>, 533 U.S. at 201, 121 S.Ct. 2151.

A balancing of these factors suggests that the force used by Officer Fields in effecting the arrest of Mr. Mulcahy was objectively reasonable. As to the first factor, at the time Officer Fields acted, he had probable cause to suspect Mr. Mulcahy of at least three crimes – alcohol intoxication in a public place, drinking alcohol in a public place, and disorderly conduct. Mr. Mulcahy concedes that he was drunk and mad as hell on the evening in question, and that is consistent with Officer Fields' Declaration testimony that Mr. Mulcahy was shouting obscenities, slurring his speech, reeking of alcohol, and stumbling. As to the second factor, Officer Fields observed that Mr. Mulcahy was so intoxicated and belligerent that he posed a threat to himself. While refusing to let go of his cane, Mr. Mulcahy could have also been a threat to others. The reasonableness of Officer Fields' actions is also bolstered by the fact that Officer Fields knew Mr. Mulcahy to be mentally unstable from a previous encounter, and that Mr. Mulcahy had a prior conviction for Wanton Endangerment for discharging a gun between the legs of his daughter.

The third factor also weighs in favor of Officer Fields since Mr. Mulcahy was struggling against being handcuffed, and admittedly was struggling against handcuffs once they were in place. Finally, as to Mr. Mulcahy's demeanor, he admits that he was drunk and angry, struggling against the handcuffs. This is consistent with Officer Fields' testimony that Mr. Mulcahy was intoxicated, defiant, and unpredictable at the time of arrest and handcuffing. (See, e.g., <u>Marvin</u>, 509 F.3d at 246

9

(6th Cir. 2007) recognizing that a suspect's heavy intoxication created a volatile situation.) Based upon the totality of the circumstances, the Court concludes that Officer Fields' use of force in applying the handcuffs was objectively reasonable.

Mr. Mulcahy's overriding complaint is that Officer Fields applied the handcuffs too tightly, and did not loosen them after Mr. Mulcahy complained. The Sixth Circuit recognizes that the Fourth Amendment "prohibits unduly tight handcuffing in the course of an arrest," and that this general principle is clearly established for purposes of qualified immunity. Lyons v. City of Zenia, 417 F.3d 565, 575 (2005). Therein, the Sixth Circuit noted that not all allegations of tight handcuffing amount to excessive force, "In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing, and must show that officers ignored plaintiff's complaints that the handcuffs were too tight." Id. at 575-76.

The evidence of record, even when viewed in the light most favorable to Mr. Mulcahy, does not establish that the handcuffs were too tight or that his complaints were ignored by Officer Fields. While Mr. Mulcahy's version of events differs from that of Officer Fields, for purposes of summary judgment this Court must make sure that the facts considered are supported by the record. As the Supreme Court has noted, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 127 S.Ct. at 1776.

Here, Mr. Mulcahy has offered photographs of a bruise or abrasion on his left wrist taken a few days after the incident in question as proof that the handcuffs were too tight. Unfortunately, the location of the abrasion belies Mr. Mulcahy's claim of the handcuffs being too tight. It simply

defies logic that the handcuffs could have been applied too tightly at a location some one to two inches above the smallest portion of the wrist to cause that injury. Officer Fields' testimony that he applied the handcuffs at the smallest part of the wrist and checked them twice, coupled with the expert testimony from Mr. Qulia noting the inconsistency of the handcuffs being at once too tight and yet capable of being moved some one to two inches above the wrist "valley" make Mr. Mulcahy's allegation implausible. The only other, non-metaphysical[2] explanation for the injury complained of by Mr. Mulcahy is his admitted struggle against the handcuffs while he was intoxicated and angry.

Thus, the Court concludes that Officer Fields used reasonable force in effecting the arrest of Mr. Mulcahy. Accordingly, Mr. Mulcahy's 1983 claim of excessive force fails because he has not established that his constitutional rights were violated. Accordingly, the Court need not reach the issue of whether the individual defendants are entitled to qualified immunity. See, e.g., Willis v. Neal, 247 Fed. Appx. 738, 744 (6th Cir. 2007); Marvin, 509 F.3d at 251 (6th Cir. 2007)(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

While it is not entirely clear from the Complaint and pleadings whether Mr. Mulcahy is claiming any state law tort claims, the Court will nonetheless address that issue. For purposes of analysis, the Court assumes that Mr. Mulcahy's Complaint could sound claims in assault and battery. In Kentucky, an officer is not liable for assault or battery if, in the course of making an arrest, the officer used such physical force as was necessary or in the exercise of reasonable judgment appeared

---

[2]A respondent to a motion for summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." And "[W]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible. Betkerur v. Aultman Hospital Association, 78 F.3d 1079, 1087 (6th Cir. 1996).

to be necessary, to effect the arrest but no more. City of Lexington v. Gray, 499 S.W.2d 72, 74 (Ky. 1973); see also K.R.S. §431.025(3). Because the Court has already determined that Officer Fields' actions were objectively reasonable in the §1983 context, the Court further concludes that Mr. Mulcahy cannot establish a claim under Kentucky law. See, e.g., Atwell v. Hart County, 122 Fed. Appx. 215, 219 (6th Cir. 2005).

## CONCLUSION

IT IS ORDERED: There are no genuine issues of material fact and Defendants are entitled to summary judgment as a matter of law. For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED and plaintiff's case is dismissed with prejudice.